Peter B. Janci, OSB No. 074249
peter@crewjanci.com
Kendall M. H. Spinella, OSB No. 214446
kendall@crewjanci.com
Crew Janci LLP
9755 SW Barnes Road, Suite 430
Portland, Oregon 97225
Telephone: (503) 306-0224

Paul Galm, OSB No. 002600
paul@paulgalmlaw.com
Galm Law
50 SW Pine St., #403
Portland, OR 97204
Telephone: (503) 647-6000

*Of Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| T.Z., D.Z., G.T., D.M., C.A., J.O., S.W., and T.W., proceeding under pseudonyms, | Case No.  3:25-CV-01122-AN |
| Plaintiffs, | |
| v. | **DECLARATION OF JAMES FARMER** |
| STATE OF OREGON, by and through the Oregon Youth Authority; ROBERT JESTER; BOBBY MINK; COLETTE PETERS; DIRECTORS #4-8; GARY LAWHEAD; MIKE CONZONER; DARIN HUMPHREYS; SID THOMPSON; and SUPERINTENDENTS #5-8, | |
| Defendants. | |

I, James Farmer, hereby declare as follows:

1. I began working at MacLaren Youth Correctional Facility ("MacLaren") as a Group Life Coordinator (GLC) in 1995. I initially worked in McKay Cottage at

Page 1 –
DECLARATION OF
JAMES FARMER

GALM LAW
50 SW PINE ST., #403
PORTLAND, OR 97204
PHONE:  (503) 641-6000

CREW JANCI LLP
9755 SW BARNES RD STE 430
PORTLAND, OR  97225
PHONE: (503) 306-0224

EXHIBIT 33
PTF_TAM_PROD004807

MacLaren for about a year.

2.    In around 1996, I continued my employment with OYA at Hillcrest Youth Correctional Facility. I worked at Hillcrest for approximately two years (until around 1998).

3.    In approximately 1998, I returned to work at MacLaren Youth Correctional Facility.  Thereafter, I worked at MacLaren for more than 20 years until I retired from OYA on January 1, 2020.  During my years at MacLaren, I worked at McKay Cottage and in GEER 3.

4.    Throughout my entire career with OYA, I served exclusively as a member of the "line staff." I was also one of the regional representatives of the union SEIU 503.

5.    As line staff for OYA, we were mandatory reporters of suspected child abuse.

6.    Starting in the late 1990s, I was told on multiple occasions by youth that Dr. Gary Edwards, a doctor and medical director at MacLaren, performed physical examinations on incarcerated youth at MacLaren without wearing gloves. I understood this included Dr. Edwards touching boys' genitals without wearing gloves.

7.    The youth who reported this to me at MacLaren would routinely avoid appointments with Dr. Edwards, expressing that Dr. Edwards' behavior was "very weird" and "gross."

8.    On the many occasions that a youth at MacLaren complained about Dr. Edwards not wearing gloves during exams, staff, including myself, would ask the youth if they wanted to file a complaint.

Page 2 –
DECLARATION OF
JAMES FARMER

GALM LAW
50 SW PINE ST., #403
PORTLAND, OR 97204
PHONE:  (503) 641-6000

CREW JANCI LLP
9755 SW BARNES RD STE 430
PORTLAND, OR  97225
PHONE: (503) 306-0224

EXHIBIT 33
PTF_TAM_PROD004808

9.      At that time, youth complaints were facilitated by staff using a paper document called a "Special Incident Report" (or "SIR"). (In later years, reports were computerized and called "Youth Incident Reports" (or "YIRs")).

10.     Although I would ask youth if they wanted to file a complaint about Dr. Edwards using a Special Incident Report, most youth did not want to make a written report.

11.     The youth at MacLaren frequently referred to Dr. Edwards by the nickname "Dr. Cold Fingers" because Dr. Edwards had the practice of touching the boys with cold, ungloved hands.

12.     At times, OYA staff also used the nickname "Dr. Cold Fingers."  When I heard staff use this nickname, I understood they were referring to Dr. Edwards.  I found this kind of joking by staff to be unprofessional.

13.     Given how frequently these complaints regarding Dr. Edwards' conduct were mentioned by youth and staff at MacLaren, I formed the understanding that such complaints were known to OYA supervisors at MacLaren.

14.     I personally verbally communicated the complaints of youth about Dr. Edwards' conduct to Curtis Albright, who served as one of my direct supervisors and an assistant manager at MacLaren.

15.     When I subsequently heard about lawsuits involving Dr. Edwards, I was not at all surprised, as youth had repeatedly alerted me to his behavior years earlier.

16.     I have reason to believe that OYA management's lack of accountability for staff at MacLaren was part of a wider culture of non-reporting and avoidance of scandal, based on other cases involving sexual misconduct by other OYA staff towards OYA youth.

Page 3 –
DECLARATION OF
JAMES FARMER

GALM LAW
50 SW PINE ST., #403
PORTLAND, OR 97204
PHONE: (503) 641-6000

CREW JANCI LLP
9755 SW BARNES RD STE 430
PORTLAND, OR  97225
PHONE: (503) 506-0224

EXHIBIT 33
PTF_TAM_PROD004809

Docusign Envelope ID: 93E6D9E8-34FC-4F85-A961-97F3D9A8D743

17.    In the late 1990s, another staff member, Sam Allen, and I caught another OYA staffer—recreation aide Susie Baumgartner—emerging from an area she was not permitted to be in with a youth. Our observations and the surrounding circumstances suggested that Ms. Baumgartner was likely engaged in sexual misconduct with this OYA youth.

18.    We reported Baumgartner to OYA management. Although her conduct appeared to be inappropriate, rather than facing criminal or employment consequences, Baumgartner was allowed by OYA management to quietly resign weeks later. To my knowledge, OYA management did not report the misconduct by Baumgartner to law enforcement.

19.    After leaving her employment with OYA, Ms. Baumgartner was subsequently able to obtain a job at Gladstone High School. Shortly after learning this, I personally called Gladstone High School's principal to notify them that their new PE teacher had just been let go from MacLaren for an inappropriate relationship with a youth.

20.    Based on my observations of how this matter and the situation with Dr. Edwards was handled by OYA management, it appeared to me that OYA had a practice of responding to situations of inappropriate conduct by staff towards youth in a manner that would minimize scandal or bad publicity for the institution.

21.    Throughout my more than 25-year career at MacLaren, I also observed persistent issues with staff turnover, a lack of consistent standards, and a persistent lowering of hiring criteria due to staffing shortages, leading to the hiring of unqualified people for positions at OYA.

Page 4 –
DECLARATION OF
JAMES FARMER

GALM LAW
50 SW PINE ST., #403
PORTLAND, OR 97204
PHONE: (503) 641-6000

CREW JANCI LLP
9755 SW BARNES RD STE 430
PORTLAND, OR 97225
PHONE: (503) 306-0224

EXHIBIT 33
PTF_TAM_PROD004810

Docusign Envelope ID: 93E6D9E8-34FC-4F85-A961-97F3D9A8D743

22.     New staff at MacLaren were regularly cautioned that statistically, at least one member of each staff "academy" class was expected to be terminated for an inappropriate relationship with a youth—a prediction that, I noticed, typically came true.

23.     I observed that this revolving-door leadership, lack of consistent accountability, and lack of competency among many staff resulted in a prevailing staff culture in which repeated youth complaints about OYA staff members were consistently ignored by staff and management.

I HEREBY DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND I UNDERSTAND THAT THEY ARE MADE FOR USE AS EVIDENCE IN COURT AND ARE SUBJECT TO PENALTY FOR PERJURY.

9/26/2025

Dated this _____ day of _____, 2025.

Signed by:

8D2E8EE0737E44C...

JAMES FARMER

GALM LAW
50 SW PINE ST., #403
PORTLAND, OR 97204
PHONE: (503) 641-6000

CREW JANCI LLP
9755 SW BARNES RD STE 430
PORTLAND, OR 97225
PHONE: (503) 306-0224

EXHIBIT 33
PTF_TAM_PROD004811