Peter B. Janci, OSB No. 074249
peter@crewjanci.com
Kendall M. H. Spinella, OSB No. 214446
kendall@crewjanci.com
Crew Janci Attorneys
9755 SW Barnes Road, Suite 430
Portland, OR 97225
Telephone: (503) 306-0224

Paul Galm, OSB No. 002600
paul@paulgalmlaw.com
Galm Law
50 SW Pine Street, Suite 403
Portland, OR 97204
Telephone: (503) 641-6000

*Of Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| T.Z., D.Z., G.T., D.M., C.A., J.O., S.W., and T.W., proceeding under pseudonyms, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF OREGON, by and through the Oregon Youth Authority; ROBERT JESTER; BOBBY MINK; COLETTE PETERS; DIRECTORS #4-8; GARY LAWHEAD; MIKE CONZONER; DARIN HUMPHREYS; SID THOMPSON; and SUPERINTENDENTS #5-8, <br><br> Defendants. | Case No. 3:25-CV-01122-MC <br><br><br><br> **DECLARATION OF DR. MICHAEL PUERINI** |

Page 1 –
DECLARATION OF DR.
MICHAEL PUERINI

GALM LAW
50 SW PINE STREET, #403
PORTLAND, OR 97204
PHONE: (503) 641-6000

CREW JANCI ATTORNEYS
9755 SW BARNES RD STE 430
PORTLAND OR 97225
PHONE: (503) 306-0224

EXHIBIT 37
PTF_TAM_PROD004826

Docusign Envelope ID: E593610B-6B9C-4B1B-BA64-451AAC97DBAA

I, Dr. Michael T. Puerini, hereby declare as follows:

1.    I have been a licensed doctor in Oregon since 1987, and a diplomate both with the American Board of Family Practice and National Board of Medical Examiners. I am board eligible in Family Medicine. I have been a certified correctional health professional since 1998.

2.    I was a physician accreditation surveyor for the National Commission of Correctional Health Care (NCCHC) from approximately 2000 to 2018. I have been a member of the American College of Correctional Physicians (ACCP) since 1997, serving as ACCP Board President from 2011 to 2013. I served on the ACCP Board from 2005 to 2015. I currently serve on the ACCP Education Committee.

3.    I worked for the Oregon Youth Authority (OYA) as a physician at Hillcrest Youth Correctional Facility from 1992 to 2005. I resigned from my position at Hillcrest because administrators interfered with my medical decision in a particular case, which I found unacceptable.

4.    Based on my experience, I believe administrator interference occurred because OYA lacked a medical director to oversee medical operations at all its youth correctional facilities. I advocated for OYA to create a medical director position to provide critically needed medical oversight and to ensure uniform protocols and standards. As it was, physicians at each OYA facility were essentially free to create their own protocols and standards, which resulted in inconsistencies among medical practices within OYA facilities.

5.    Beginning in 1997, I also worked for the Oregon Department of Corrections (ODC). I was Chief Medical Officer at the Oregon State Correctional Institution (OSCI) from 1998 to 2016. I fully retired from my employment with ODC in 2022.

///

Page 2 –
DECLARATION OF DR.
MICHAEL PUERINI

GALM LAW
50 SW PINE STREET, #403
PORTLAND, OR 97204
PHONE: (503) 641-6000

CREW JANCI ATTORNEYS
9755 SW BARNES RD STE 430
PORTLAND OR 97225
PHONE: (503) 306-0224

EXHIBIT 37
PTF_TAM_PROD004827

6. In contrast to OYA, ODC had a medical director who provided oversight throughout my tenure. This resulted in uniform and consistent protocols and standards of care at all ODC correctional facilities.

7. I recently learned of reports that during his 30 years or so at MacLaren, Dr. Gary Edwards generally conducted testicular exams of MacLaren youth without gloves, claiming this was necessary to allow enough finger sensitivity to properly conduct the exam. This is false – in my decades of experience, I have never heard of a doctor claiming they needed to conduct a testicular exam without gloves to ensure finger sensitivity.

8. Throughout my tenure at OYA, it was my practice to ensure a nurse was in the room during an examination – for the patient's protection and mine. This was an unwritten policy at Hillcrest, including for testicular examinations. To the best of my knowledge, OYA did not have written protocols for physicians who worked in OYA facilities, which left individual physicians to conduct examinations without the protections of medical standards and oversight. It was as if physicians at each OYA facility operated in their own fiefdoms.

9. I recently learned of reports that it was Dr. Edwards' practice at MacLaren not to have nurses or other chaperones in the room during examinations of youths. My practice at Hillcrest was to always have a chaperone in the room during examinations of youths. Having a chaperone present was for the patient's protection and mine. Not only does this protect youth from wrongful conduct or abuse, but it protects medical providers from false accusations.

10. While working at Hillcrest as a medical doctor, it was my responsibility to be carefully attuned to the needs of my minor patients, including patients who were survivors of child sex abuse. Paying attention to the sensitivities of assault and trauma survivors is one of the most important jobs of a practitioner working with children. At Hillcrest, because it is a youth

GALM LAW
50 SW PINE STREET, #403
PORTLAND, OR 97204
PHONE: (503) 641-6000

CREW JANCI ATTORNEYS
9755 SW BARNES RD STE 430
PORTLAND OR 97225
PHONE: (503) 506-0224

EXHIBIT 37
PTF_TAM_PROD004828

correctional facility, I proceeded as if every patient had a history of sexual trauma. In that regard, I took extreme care in how I approached and touched patients during examinations.

11. When I worked at Hillcrest, young men were initially still housed there. At that time, I conducted intake exams on male youths, including genital exams. I always wore gloves and was always supervised by a nurse during these examinations. I made sure not to be alone with a patient without a nurse or chaperone of some sort. I never conducted a genital exam at follow-up clinic visits unless symptoms indicated that such an exam should be performed. There was no reason to do a genital exam otherwise.

12. During my 12 or so years at Hillcrest, I may have performed one or two digital rectal exams on young boys, but it was quite rare and necessitated by that boy's specific symptoms, such as a urinary tract infection. Digital rectal exams certainly were not routine.

13. I am shocked by the difference in clinical practices between my work at Hillcrest and what I now understand was happening at MacLaren. I wish I had known that Dr. Edwards was engaged in this type of conduct at the time. If I had known Dr. Edwards was engaged in the conduct described above (including one-on-one visits without chaperones, ungloved genital exams, or frequent digital rectal exams), I would have reported it to the proper authorities immediately.

///

///

///

///

///

///

GALM LAW
50 SW PINE STREET, #403
PORTLAND, OR 97204
PHONE: (503) 641-6000

CREW JANCI ATTORNEYS
9755 SW BARNES RD STE 430
PORTLAND OR 97225
PHONE: (503) 306-0224

EXHIBIT 37
PTF_TAM_PROD004829

14. This type of conduct toward patients goes against all the principles of good medicine in juvenile correctional facilities that have been in place since the early 1990s, when I began my work with the Oregon Youth Authority.

I HEREBY DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND I UNDERSTAND THAT THEY ARE MADE FOR USE AS EVIDENCE IN COURT AND ARE SUBJECT TO PENALTY FOR PERJURY.

1/12/2026

Dated this _____ day of _____, 2026.

DocuSigned by:

*Dr. Michael Puerini*

4AD68958007F49A...

Dr. Michael Puerini

Page 5 –
DECLARATION OF DR.
MICHAEL PUERINI

GALM LAW
50 SW PINE STREET, #403
PORTLAND, OR 97204
PHONE: (503) 641-6000

CREW JANCI ATTORNEYS
9755 SW BARNES RD STE 430
PORTLAND OR 97225
PHONE: (503) 506-0224

EXHIBIT 37
PTF_TAM_PROD004830