DAN RAYFIELD
Attorney General
NATHANIEL AGGREY #172283
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email: Nathaniel.Aggrey@doj.oregon.gov

JESSICA KAMPFE #063887
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Jessica.Kampfe@doj.oregon.gov

Attorneys for Defendants Adams, Berger, Brazeau, Conzoner, Cox, Florip, Hill, Humphreys, Jester, Lawhead, O'Leary, Pakseresht, Peters, Riggan, State of Oregon, and Thompson

Additional Counsel of Record Listed on Signature Page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| T.A.M., J.K.B., E.C.R., J.K.C., A.M.W., R.L.M., N.T.N., A.W., B.W.H., J.D.W., and S.S.L., individuals proceeding under pseudonyms,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF OREGON, et al.,<br><br>Defendants. | Case No. 3:25-CV-01668-MC<br><br>STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

## TABLE OF CONTENTS

LOCAL RULE 7-1(A) CERTIFICATION ... 1

MOTION ... 1

INTRODUCTION ... 1

BACKGROUND ... 3

LEGAL STANDARD ... 4

ARGUMENT ... 5

I. The Five Time-barred Plaintiffs' federal claims are untimely and should be dismissed. ... 5

A. T.A.M. ... 8

B. E.C.R. ... 9

C. J.K.C ... 12

D. A.M.W. ... 12

E. R.L.M. ... 14

II. The five Time-barred Plaintiffs seventh claims for relief for battery under the OTCA are untimely and should be dismissed. ... 15

III. Plaintiffs cannot meet their burden for federal claims against supervisory defendants Richard A. Hill, Darin Humphreys, Isidro Thompson, Daniel Berger, and Philip Cox. ... 17

A. Plaintiffs cannot meet their burden of proof for claims against Defendant Richard A. Hill. ... 20

B. Plaintiffs cannot meet their burden of proof for claims against Defendant Darin Humphreys. ... 21

C. Plaintiffs cannot meet their burden of proof for claims against Defendants Isidro Thompson, Daniel Berger, and Philip Cox. ... 22

IV. Plaintiffs concede that they do not have Supervisory claims against all Supervisory Defendants. ... 23

V. Plaintiffs Concede that only Adjudicated Plaintiffs have Fourteenth amendment claims and only Convicted Plaintiffs have Eighth Amendment Claims. ... 24

CONCLUSION ... 25



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

# TABLE OF AUTHORITIES

**Cases**


*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ... 4

*Ashcroft v. Iqbal* 129 S.Ct. 1937 (2009) ... 18

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397 (1997) ... 19

*Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577 (9th Cir. 2012) ... 6, 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ... 4, 5

*Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136 (S.D. Cal. 2022) ... 5

*Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321 (2013) ... 16, 17

*Doe v. County of Josephine*, No. 1:12-cv-2080-CL, 2015 WL 2412181 (D. Or. 2015).. 7, 8, 9, 10, 11, 12

*Felarca v. Birgeneau*, 891 F.3d 809 (9th Cir. 2018) ... 19

*Gibson v. City of Portland*, 165 F.4th 1265 (9th Cir. 2026) ... 18

*Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989) ... 18

*Holdner v. Columbia County*, 51 Or. App. 605 (1981) ... 16

*Hyde v. City of Willcox*, 23 F.4th 863 (9th Cir. 2022) ... 19

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ... 5

*Jones v. Blanas*, 393 F.3d 918 (9th Cir. 200 ... 6

*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) ... 20

*Lavelle-Hayden v. Legacy Health*, No. 3:22-cv-01752-IM, 2024 WL 3822712 (D. Or. 2024) ... 5

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ... 20

*Momox-Caselis v. Donohue*, 987 F.3d 835 (9th Cir. 2021) ... 20

*Moore v. Portland Pub. Schs.*, 328 Or. App. 391 (2023) ... 15, 16

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ... 5

*Olson v. County of Grant*, 127 F.4th 1193 (9th Cir. 2025) ... 19, 23

*Orr v. Bank of American, NT & SA*, 285 F.3d 764 (9th Cir. 2002) ... 5

*Peck v. Montoya*, 51 F.4th 877 (9th Cir. 2022) ... 20




Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

*Rivera v. Philip Morris, Inc.*, 395 F.3d 1142 (9th Cir. 2005) ........ 4

*Rotkiske v. Klemm*, 589 U.S. 8 (2019) ........ 7

*Siskiyou Pines Devs. LLC v. Civ. W. Eng'g Servs., Inc.*, 350 Or. App. 28 (2026) ........ 16

*St. Clair v. Cnty. of Okanogan*, 154 F.4th 1154 (2025) ........ 7

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ........ 17, 18, 19

*Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833 (9th Cir. 2010) ........ 19, 20

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) ........ 5

*TRW Inc. v. Andrews*, 534 U.S. 19, 27, 122 S. Ct. 441 (2001) ........ 7

*Wallace v. Kato*, 549 U.S. 384 (2007) ........ 7

*Washington Mut. Inc. v. United States*, 636 F.3d 1207 (9th Cir. 2011) ........ 4

**Statutes**

O.R.S 12.160 ........ 5, 6

O.R.S. 12.110 ........ 6

O.R.S. 30.260–30.300 ........ 15

O.R.S. 30.275 ........ 15

O.R.S. 30.275(9) ........ 15

**Rules and Regulations**

Fed. R. Civ. P. 56(a) ........ 4

Fed. R. Civ. P. 56(c)(2) ........ 5



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

## LOCAL RULE 7-1(a) CERTIFICATION

Pursuant to Local Rule 7-1(a)(1)(A), counsel for the Oregon Youth Authority ("OYA") and individual named Defendants[1] (collectively, "State Defendants") conferred with plaintiffs' counsel via telephone on July 24, 2026, regarding the relief sought in this motion. While conferral did result in some narrowing of the relief sought in this motion, as reflected in sections IV and V, below, the parties were not able to resolve all of their disagreements, and plaintiffs oppose this motion.

## MOTION

Pursuant to Federal Rule of Civil Procedure 56(a), State Defendants move for summary judgment in their favor on (1) all claims filed by plaintiffs T.A.M., E.C.R., J.K.C., A.M.W., and R.L.M. and (2) plaintiffs' federal claims against defendants Richard A. Hill, Darin Humphreys, Isidro Thompson, Daniel Berger, and Philip Cox under 42 U.S.C. § 1983, *i.e.*, the Second, Third, and Fourth Claims for Relief in the Second Amended Complaint ("SAC"). Dkt. No. 53. State Defendants support the motion with the points and authorities herein and the Declarations of Jessica Kampfe (Kampfe Decl., filed under seal), Paige Labarre-Bates (Labarre-Bates Decl.), and Philip Cox (Cox Decl.).

## INTRODUCTION

This case involves allegations by eleven different plaintiffs of sexual abuse by Dr. Edward Gary Edwards ("Dr. Edwards"), a now-deceased physician at the MacLaren Youth Correctional Facility ("MYCF") and one other OYA employee, Susan Baumgartner, at varying points between 2002 and 2017. Dr. Edwards, who died shortly before this case was filed, is not a party to this case. The claims, therefore, are against a broad assortment of other OYA employees that plaintiffs allege bear responsibility for Dr. Edwards' actions. The State brings this narrow

[1] The State Defendants are Oregon Youth Authority, Marcia Adams, Daniel Berger, Karen Brazeau, Michael Conzoner, Brian Florip, Richard Hill, Darin Humphreys, Robert Jester, Gary Lawhead, Joseph O'Leary, Fariborz Pakseresht, Colette Peters, Michael Riggan, Isidro Thompson, and Philip Cox. Ms. Baumgartner is not represented by the Oregon Department of Justice in this matter.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

dispositive motion to focus this case on those plaintiffs, defendants, and claims that are legally appropriate for trial. The State Defendants' motions fall in two general categories: plaintiffs' whose claims cannot proceed, and defendants against whom the plaintiffs' claims cannot proceed as a matter of law.

First, evidence that has come out in discovery shows that the statute of limitations has passed for certain plaintiffs. This Court should grant summary judgment against plaintiffs T.A.M., E.C.R., J.K.C., A.M.W., and R.L.M. (collectively "Time-barred Plaintiffs") because each filed his claims outside of the applicable statute of limitations. The plaintiffs' deposition testimony and other evidence make it clear that each Time-barred Plaintiff knew of both their injury and the cause of their injury more than two years prior to the filing of the originating Complaint on September 16, 2025. Dkt. No. 1. There is not a legal or factual basis to allow the claims of the five Time-barred plaintiffs to go forward.

Second, the statute of limitations has passed on the five Time-barred Plaintiff's battery claim under the Oregon Tort Claims Act (OTLA) because each filed his claim outside of the applicable statute of limitations. The plaintiffs' deposition testimony and other evidence makes it clear that each Time-barred Plaintiff knew the harm, causation, and tortious nature of the conduct more than two years prior to the filing of the originating Complaint on September 16, 2025. *Id.* There is not a legal or factual basis to allow the claims of the five Time-barred plaintiffs to go forward.

Third, plaintiffs cannot establish supervisory liability with respect to certain defendants, and any associated claims that rely on supervisory liability theory—namely the federal claims against these defendants—should not proceed to trial. This Court should grant summary judgment against all plaintiffs' federal claims against defendants Richard A. Hill, Darin Humphreys, Isidro Thompson, Daniel Berger, and Philip Cox (collectively "Non-Supervisory Defendants") because plaintiffs cannot meet their burden as to each of these individual defendants. To get beyond summary judgment on these claims, plaintiffs must point to evidence



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

in the record that would support a finding of either (1) personal involvement in the alleged constitutional deprivation, or (2) a sufficient causal connection exists between each supervisor's wrongful conduct and the constitutional violation alleged that would lead to an inference by each Non-Supervisory Defendant that Plaintiffs were likely to suffer harm.

Plaintiffs cannot meet either burden with respect to the Non-Supervisory Defendants. There is no evidence that any State Defendant had personal involvement in the abusive acts plaintiffs allege in the Second Amended Complaint. Moreover plaintiffs cannot show sufficient causal connection between the Non-Supervisory Defendants' alleged wrongful conduct and resulting constitutional violations for the time period in which plaintiffs allege injury to have occurred, either because they did not have a supervisory role over Dr. Edwards, did not work at OYA or MYCF at the same time as plaintiffs were in custody at the facility, or both. State Defendants, therefore, respectfully request that this Court (1) grant judgement to State Defendants on all of the Time-barred Plaintiffs claims, and (2) grant judgement to State Defendants on the federal claims against Non-Supervisory Defendants.

## BACKGROUND

The Oregon Youth Authority is part of the youth justice system in the State of Oregon, operating both custodial facilities and supervisory programs for youth between the ages of 12 and 24. OYA, together with the juvenile courts, state and local law enforcement and governments, and Oregon's tribal governments, is responsible for the custody and rehabilitation of youth adjudicated or convicted of crimes they committed before age 18 for which juvenile courts refer them to OYA. OYA's services include residential treatment for mental and behavioral health in contracted facilities, family placements (called proctor or foster homes), probation and parole supervision, and placement in close-custody facilities operated by OYA. OYA's core mission is rehabilitation and safe integration of youth into their communities. OYA provides extensive services including substance abuse treatment, sex offender treatment, vocational training, primary and secondary education, mental and behavioral health services, and



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

primary medical care. OYA serves over 1,000 youth per year, with approximately 50% of those in close-custody facilities. Since 2000 the annual numbers of youth engaged with the Oregon juvenile justice system have declined, which is in keeping with trends nationally.

MYCF, located in Woodburn Oregon, is the largest close-custody facility for youth in Oregon and houses boys and young men. Plaintiffs are all men who were in custody and spent some time at MYCF between 2002 and 2017. Each alleges that Dr. Edwards committed acts of sexual abuse against them.

Each individual plaintiff's period in custody at MYCF occurred at various times during a fifteen year time span between 2002-2017. Likewise the individual defendants' terms of employment with OYA occurred at various times during the applicable period, but not all defendants were employed at OYA in a supervisory role while each plaintiff was housed at MYCF. Plaintiffs, including the Time-barred Plaintiffs, now bring state-law claims against the State of Oregon by and through OYA, and federal claims against sixteen individual state employees (former directors, supervisors, administrators, and a gym teacher), including the Non-supervisory Defendants.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The trial court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). On issues where the nonmoving party bears the burden of proof at trial, the moving party carries its burden by pointing out that there is an absence of



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The nonmoving party's burden is "not a light one. ... The nonmoving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24. Because plaintiff bears the burden of establishing that the constitutional violation occurred, he also bears the burden of rejoinder at summary judgment to provide evidence to establish the elements of the underlying constitutional claim. *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996), holding modified by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).

A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of American, NT & SA*, 285 F.3d 764, 771 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(c)(2). Because summary judgment qualifies as a substitute for a trial, and hearsay (absent an exception or exclusion) is inadmissible at trial, a motion for summary judgment and papers opposing it may not be supported by hearsay. *Lavelle-Hayden v. Legacy Health*, No. 3:22-cv-01752-IM, 2024 WL 3822712, at *1 (D. Or. 2024) (quoting *Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1157 (S.D. Cal. 2022)). Plaintiff cannot introduce his expert or the expert's report as lay testimony on summary judgment. *Id.*

## ARGUMENT

### I. The Five Time-barred Plaintiffs' federal claims are untimely and should be dismissed.

The Time-barred Plaintiffs allege that they were abused at MYCF between 2002 and 2004. SAC ¶¶ 52-55, 68-72, 76-77, 81-84. Statutes of limitations establish fixed points at which liability exposure ends and, in the interest of due process, protect defendants from having to defend against claims where witnesses are no longer available, memories have faded, and evidence has been lost as may be the case where claims are filed over a decade after they have accrued. Here, plaintiffs advance multiple theories—minority under O.R.S 12.160, incapacity or



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

"disabling mental condition," and equitable estoppel/fraudulent concealment in an effort to avoid the applicable statutes of limitation and establish timeliness. SAC ¶¶ 125–126. Thus, Plaintiffs admit that their claims are untimely under the applicable statute of limitations and, unless one of their pled exceptions applies, are time barred. Each theory fails as a matter of law. Accordingly, the Court should grant summary judgment in favor of the State Defendants on all claims asserted by the Time-barred Plaintiffs.

First, the applicable statute of limitations is two years. 42 USC Section 1983 has no statute of limitations of its own and borrows the general personal injury statute of limitations from the forum state, including the forum state's law regarding equitable tolling, "except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). When Oregon is the forum state, the governing statute of limitations for a Section 1983 claim is O.R.S. 12.110, which requires tort claims to be filed within two years of their accrual. *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012). Plaintiffs' claims are facially untimely given that more than two years have passed since the alleged injury.

Second, Plaintiffs cannot rely on the minority tolling statute, Section 12.160 of the Oregon Revised Statutes, to preserve their claims. When a claim accrues while a plaintiff is a minor, the statute of limitations is tolled for "no more than five years" or until the minor turns 19, whichever comes first. ORS 12.160(1), (2). Time-barred Plaintiffs are all in their thirties or forties, and each concedes on the face of the complaint that the injury—their interactions with Dr. Edwards—occurred while they were adolescents or young adults and living at MYCF between 2002 to 2017. Plaintiffs filed their claims in 2025 making the claims facially untimely under O.R.S. 12.160. Where the claims are facially untimely, but rely on theories of delayed discovery rather than on the limitations period itself, the Court must turn to the factual development concerning the alleged delayed discovery theories.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Third, the facts do not support a theory of delayed discovery for the Time-barred Plaintiffs. The accrual of Section 1983 claims involving sexual abuse can be delayed by a plaintiff's vulnerability at the time of alleged incident, power imbalances between the plaintiff and defendant, and plaintiff's shame, humiliation, and guilt. *St. Clair v. Cnty. of Okanogan*, 154 F.4th 1154, 1160 (2025)[2]. However, where facts show that a plaintiff is aware of both his or her injury and its cause, the awareness is relevant to claim accrual. The Ninth Circuit has rejected a delayed-discovery argument where the plaintiff "was aware of the injuries he experienced as a child as well as their causes at the time," holding that federal common law did not support delayed accrual. *Bonneau*, 666 F.3d at 577. The Time-barred Plaintiffs have each testified to the fact that they were aware of both the injury and its cause at the time it occurred and/or in the years that followed, long before the filing of the Complaint.

Here, each of the Time-barred Plaintiff's claims are analogous to *Doe v. County of Josephine*, No. 1:12-cv-2080-CL, 2015 WL 2412181 (D. Or. 2015). In *Doe*, plaintiffs alleged that they were sexually abused by their probation officer two decades before filing their claims under Section 1983. As in that case, the Time-barred Plaintiffs here admit that they knew that they were sexually abused at the time of the injury or in the years that followed, and knew the cause of that injury years prior to the date of the filing of their claims. *See id.* at *2. Time-barred

[2] The Ninth Circuit's delayed accrual rule seems in tension with decisions in which the United States Supreme Court has consistently held to the contrary. *See Wallace v. Kato*, 549 U.S. 384, 388, (2007) (explaining that, for Section 1983 claims, the proper accrual rule should be determined "by federal rules conforming in general to common-law tort principles" under which "the standard rule" is "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief" (citation modified)). *Id.* at 391 ("Under the traditional rule of accrual the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages." (citation modified)). *See also TRW Inc. v. Andrews*, 534 U.S. 19, 27, 122 S. Ct. 441 (2001) (observing "that lower federal courts generally apply a discovery accrual rule when a statute is silent on the issue," but that the Court has "not adopted that position" (citation modified)); *id.* at 35-36 (Scalia, J., concurring) (expressing "little doubt" that the Ninth Circuit was incorrect to state that the "general federal rule" is "that a federal statute of limitations begins to run when a party knows or has reason to know that she was injured"); *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) (observing that an "expansive approach to the discovery rule is a 'bad wine of recent vintage'" (quoting Scalia, J., concurring)).



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Plaintiffs' allegations about the nature and of the alleged abuse, leaves no question of fact concerning whether they "knew or should have known of the alleged injury and its source" and as the court found in *Doe*, the evidence shows that Time-barred plaintiffs knew or should have known they were injured at the time of the alleged contact with Dr, Edwards or at least by the time they reached the age of majority. *See id.*

Time-barred Plaintiffs' delayed discovery arguments fail because the law, taken with the factual evidence, shows that T.A.M., E.C.R., J.K.C., A.M.W., and R.L.M. were each aware of their injuries and the cause of their injuries for several years before filing a complaint. State Defendants address the particulars of each of these five Time-barred Plaintiffs' claims below.

**A. T.A.M.**

T.A.M. admitted in the complaint and in deposition testimony, that he was abused, that he knew he was abused, and that he reported the abuse. T.A.M. testified that, although he could not recall the exact dates, he was at MYCF between 2001 and 2003.[3] Kampfe Decl. Ex. 115, Deposition of T.A.M. at 58:14-59. He testified that Dr. Edwards touched him inappropriately and in a sexual manner during two visits to the medical clinic. *Id.* at 53:12-54:16. T.A.M. testified that during the first visit he was groped, that Dr. Edwards "jacked me off and jacked himself off" while "groping me", and that T.A.M. got an "erection". *Id.* T.A.M. testified that he was "very uncomfortable" because he "had to sit there and let him do more after he did that". *Id.* at 54:10-16. T.A.M. testified that during the second visit, Dr. Edwards "touched my crotch", and he "played with my butt as he was playing with himself". *Id* at 55:6-57:10. As examined in Doe, the very nature of the touching alleged should leave no question of T.A.M.'s recognition of the injury and its source. *See Doe*, 2015 WL 2412181 at *2. T.A.M. testified that after the "second abuse happened", he "turned in a kite"[4] saying that "Dr. Edwards grabbed my butt and touched

[3] T.A.M.'s OYA youth file shows that he was at MYCF 12/17/02 - 1/06/03. The parties do not dispute that T.A.M. was at MYCF between 2002 and 2003.

[4] A kite or "kyte" is a term for an internal communication form used by individuals in custody within the institution.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

my wiener”. *Id.* at 116:17-117:24. He expected some action to be taken against Dr. Edwards for abusing him. *Id* at 117:8-24. Based on this testimony, it is clear that T.A.M. knew he was abused while he was at MYCF between 2002-2003. He made a written and a verbal report to staff at MYCF disclosing that he had been abused. *Id.* at 96:3-97:9; 116:10-117:12. As in *Doe*, the fact that T.A.M. recognized the harm and its cause is the crucial element here; the cause of action accrues even though the full extent of the injury is not then known or predictable. *See Doe*, 2015 WL 2412181, at *3. T.A.M. further testified that he disclosed the alleged abuse by reporting to multiple individuals more than two years before the filing of the complaint. He reported to “Bev Alexander”, his parole officer, between 2002 and 2003, after T.A.M. was released from OYA custody. *Id.* at 126:15-127:21. He reported to his sister and mother between 2003 and 2004. *Id.* at 26:1-34:11. And he reported to his therapist, a woman named “Jennifer”, on or about 2018 “about eight years ago.” *Id.* at 125:17-126:14. T.A.M. testified to the impact the alleged abuse had on his life in the years following his release from OYA, a time period that runs more than two years before this case was filed. *Id.* at 125:17-126:7.

There is no question, based on T.A.M.’s testimony that he recognized alleged abuse by Dr. Edwards was wrong, he knew the identity of the alleged abuser, and that it caused him harm. He reported the abuse to multiple individuals more than two years before filing the claims against State Defendants. Plaintiff T.A.M.’s federal claims are time-barred and should be dismissed based on the incontrovertible evidence in the record.

**B. E.C.R.**

Plaintiff E.C.R. admits on the face of the complaint that within months of the abuse he alleges against defendant Susan Baumgartner (“Baumgartner”) he attempted to both disclose the abuse and seek counseling for it. SAC ¶ 71. This statement is evidence of both the recognition of the injury and resulting harm, both facts that result in claim accrual pursuant to the analysis in *Doe.*



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

E.C.R. was first held in custody at MYCF on March 13, 2002. Kampfe Decl. Ex 120. E.C.R. testified at deposition that he decided to bring this lawsuit after talking with a friend about the worst thing they had ever been through and when he brought up this matter the friend informed him that there was a lawsuit he could join to seek accountability and money. Kampfe Decl. Ex. 116, Deposition of E.C.R. at 15:24-16:10. During that conversation, E.C.R. told his friend that he was "molested by a doctor and a gym teacher when he was at MacLaren." *Id.* at 17:18-21. When asked when he first realized he had been abused, E.C.R. testified that he "knew there was something wrong from [] the moment it happened." although he did not realize he had been "technically [] molested" until he looked into the case. *Id*. at 18:7-16. He also acknowledged that knew that he was molested by the gym teacher "sort of immediately" or at least by his mid to late 20s. *Id.* at 18:20-19:2.

E.C.R.'s further testimony supports his knowledge that he had been harmed and who caused the harm at the moment it happened, as he testified that he talked with staff at MCYF when about his encounter with Dr. Edwards. *Id.* at 19:7-23. E.C.R. told MYCF staff that he "didn't like what was happening and that [Dr. Edwards] scared me and I didn't want to go there anymore." *Id.* at 20:6-9; 127:17-25; 128:1-25; 129:1-19; 134:24-135:21. He further elaborated that he told one staffer "[Dr. Edwards] was doing inappropriate things to me, that I didn't feel comfortable with what he was doing to me." *Id.* at 20:10-14; 26:6-9). E.C.R. told a second staffer "That the doctor was making me uncomfortable and touching me, I didn't like it and it hurt, he was hurting me." *Id.* at 21:9-13). As in *Doe*, where plaintiffs admitted that they knew they had been abused and in combination with the nature of the alleged abuse, the claim accrued when E.C.R. knew or should have known he was injured at the time of the alleged abuse or at least by the age of majority.

E.C.R. testified that while he was at MacLaren he heard the term "Dr. Cold Fingers" and he understood that the term referred to how Dr. Edwards was a "creepy doctor, didn't wear gloves, and molested kids, touched them without gloves." *Id*. at 139:13-25; 140:1-9. This public



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

knowledge element reflects the facts in *Doe*, in which plaintiffs alleged that it was "common knowledge that the alleged abuser had a "prurient interest" in juveniles." *Doe* 2015 WL 2412181, at *8 (D. Or. May 18, 2015). There the court noted that if the alleged abuser's conduct was commonly known, presumably such information would have been readily discoverable, as would the public officials' alleged failure to act, long before the suit was filed. *Id.*

E.C.R. testified that he began processing the emotional trauma associated with his allegations of abuse towards the end of his time at MYCF and Hillcrest when he started writing poetry. *Id.* 52:2-53:16. Specifically, he wrote about "the pain" caused by "the doctor and other people that hurt [him]". *Id.* at 53:1-5. He acknowledged that, at that time, he felt wronged even though he did not know it to be the legal definition of sexual abuse. *Id*. at 53:6-11. As the court held in *Doe,* importantly, the "actual injury" is the harm alleged in the complaint, not the "legal wrong" that renders the injury actionable. *Doe,* 2015 WL 2412181, at *2. In other words, it is not understanding the legal theory that renders a claim actionable, it is the harm alleged in the complaint that is the "actual injury" relevant for claim accrual. *Id.*

E.C.R. discussed being a victim of sexual abuse while at MYCF with his sister as early as 2015 or 2016. *Id.* at 139: 13-25; 140:1-9. E.C.R. acknowledges on the face of the complaint that he complained to staff about the abuse and in his deposition testimony he acknowledges that he knew and/or came to understand in the years after his release from MYCF that his encounters with Dr. Edwards and/or Susan Baumgartner was both wrong and had caused him harm in the years that followed. The facts as presented by E.C.R. do not support a delayed discovery theory of claim accrual, rather the facts are that, at a minimum, E.C.R. recognized both the alleged abuse by Dr. Edwards and Baumgartner was wrong and that it caused him harm several years before pursuing claims against State Defendants. Plaintiff E.C.R.'s federal claims are time-barred and should be dismissed based on the incontrovertible evidence in the record.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

**C. J.K.C.**

J.K.C. testified at his deposition that he first entered MYCF in 2002. Kampfe Decl. Ex. 117, Deposition of J.K.C. 65: 21-22. J.K.C. testified that in 2020 he knew he had been sexually abused by Dr. Edwards. *Id.* at 60:1-12. J.K.C. further testified that while he was at MYCF he heard the nick name "Dr. Coldfingers" and that he knew "exactly what it meant, because I'd experienced it." It was "degrading and shameful and embarrassing" that these kids already knew this because "I knew what happened and they did, too." *Id.* at 83: 9-18; 84:24; 85:6. Analogous to *Doe v. County of Josephine,* Plaintiff J.K.C. understood five years prior to the filing of his federal claims both that he had been abused and the source of that injury. 2015 WL 2412181.

Like E.C.R.'s testimony, J.K.C.'s testimony as to the alleged public knowledge that what Dr. Edwards was doing was both wrong and widespread is evidence that Time-barred Plaintiffs not only recognized the injury and its cause, but had actual or reasonably discoverable facts of potential causal connection to the defendants. Furthermore, as in *Doe*, where plaintiffs sought to argue that their ongoing psychological injuries delayed claim accrual, the court confirmed that plaintiffs' claims accrued and the statute of limitations began to run when they "knew or in the exercise of reasonable diligence should have known" of some injury caused by the abuse and the causal connection between the County's conduct and their injuries. *See Doe*, 2015 WL 2412181, at *7. Based upon the established law determining claim accrual, Plaintiff J.K.C.'s claims are time-barred and should be dismissed.

**D. A.M.W.**

Plaintiff A.M.W. testified in his deposition that he was sentenced on December 31, 2003, and was transferred from detention to MYCF. Kampfe Decl. Ex. 118, Deposition of A.M.W. 43: 1-15. A.M.W. had informed his parents about the abuse by Dr. Edwards in 2003 during a family visit at MCYF. *Id.* at 28:8-30; 11; 49:17-25. In the 2003 conversation with his parents, A.M.W. told them that he "found out what they meant by Dr. Cold Fingers". *Id.* at 28: 23-24. He elaborated that "Dr. Cold Fingers" meant he plays with your nuts and kind of strokes your penis and he's not wearing gloves." *Id.* at 29: 7-8. He further testified that the name meant "being a



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

creepo". *Id*. at 126: 17-19. A.M.W. acknowledged that at that time he knew he had been harmed stating that it was "super uncomfortable," and that the doctor was inappropriately touching him. *Id.* at 28: 15, 20-22, 23-25; 29: 1-2. A.M.W. testified that in 2003, when he first spoke to his parents about Dr. Edwards, he knew he was abused. *Id.* at 30: 3-5. He further testified that because he had already informed his parents about the abuse, his parents contacted him after Dr. Edwards died to say, "He's dead and people are going after him because – and may you should reach out to someone because of what happened to you there," which is why he decided to bring this lawsuit. *Id.* at 27:21-28:7. Again, analogous to the plaintiffs in *Doe*, A.M.W. does not deny that he knew he was injured, knew the cause of the injury, and had suffered an injurious effect—even if the extent of that injurious effect was not yet known—more than two years before filing his complaint.

In addition to telling his parents, plaintiff A.M.W. also filed a grievance against Dr. Edwards following his first physical exam with Dr. Edwards which serves as further evidence of his recognition of Dr. Edward's actions as abuse contemporaneous to its occurrence. *Id*. at 100: 3-6; 101:6-23; 102:17-25; 103:1-6, and 124: 17-22. A.M.W.'s knowledge of his injury and its cause is further supported by his testimony that he filed another grievance about Dr. Edwards following his second physical exam, that he sighed when he was called to see Dr. Edwards for a third time because he "knew what was going to happen", and that after the third visit he refused to see Dr. Edwards for medical care. *Id.* at 132:2-8 and16-19; 136:16-24. He testified that the reason for his refusal was that because of Dr. Edwards' conduct he "got the heebie-jeebies every time I'd gone down there". *Id.* 137:12-18. A.M.W. testified that he also told his parents about the subsequent exams with Dr. Edwards. *Id*. at 142:25-143:10.

Again, the facts as presented by A.M.W. are analogous to the facts of *Doe.* 2015 WL 2412181. A.M.W.'s federal claims accrued upon his knowledge of both the injury and its cause. A.M.W.'s federal claims are time-barred and should be dismissed based on the incontrovertible evidence in the record.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

**E. R.L.M.**

R.L.M. was housed at MYCF between September 9, 2006 and November 15, 2006. Kampfe Decl. Ex. 118, Deposition of R.L.M. at 34:2-6. He testified that Dr. Edwards touched him inappropriately and in a sexual manner during two visits to the medical clinic. R.L.M. testified that during the first visit, "the doctor was very hands on with my penis and testicles", that he "didn't ask me to cough or flex", and it "seemed odd". *Id.* at 61:10-64:3. R.L.M testified that on the second visit, the doctor "did the same thing again, except on this visit, the doctor "stuck his fingers in my ass". *Id.* at 63:15. R.L.M. testified "that was really awkward and created a lot of awkwardness in my entire life." *Id.* at 63:16 – 63:17.

R.L.M testified that after the second visit, while still at MYCF, he knew that what Dr. Edwards did to him was abuse because "it didn't make sense for him to put his fingers in my ass at all. . . that's not normal". *Id.* at 80:1-23. R.L.M. testified that he was "100 percent" certain that he reported his abuse to "Alec Rogan"—an individual who was in custody at MYCF with R.L.M., and this conversation with Mr. Rogan occurred "many years after" both men released from OYA custody. *Id. at* 30:9-33:17; 41:15-17. R.L.M. testified that he was friends with Rogan for a period of time after they released from OYA. *Id*. R.L.M. testified that in 2015, he reported to his father, Roy McCullough Sr., that he was "molested when I was in MacLaren." *Id. at* 28:1-10; 29:7-30:5. R.L.M. testified that he did not want to bring a lawsuit after telling his father—R.L.M. wanted to avoid a legal proceeding and the related stress that comes with it—he did not want to "stir the turd". *Id.* at 46:19-48:12. It appears from the deposition that R.L.M. recognized the injury and its cause, but did not want his father to take further action with the reported information. *Id.* He wanted to move on with his life. *Id.* R.L.M. testified positively about his relationship with his father over the course of his life, he's "my best friend, he's always someone you can count on." *Id. at* 125:9-23. Similar to the plaintiffs in *Doe*, R.L.M. recognized that he was injured, he knew the identity of his abuser, and knew the cause of that injury both at the time that it occurred and more than two years before filing his complaint.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

R.L.M. admitted in deposition testimony that he knew he was abused, he knew his abuser, and he reported the abuse. R.L.M. recognized that the alleged abuse by Dr. Edwards was wrong and that it caused harm. He reported the abuse to multiple individuals more than two years before filing the claims against State Defendants. Plaintiff R.L.M.'s federal claims are time-barred and should be dismissed based on the incontrovertible evidence in the record.

## II. The five Time-barred Plaintiffs seventh claims for relief for battery under the OTCA are untimely and should be dismissed.

Time-barred Plaintiffs' Seventh Claim for relief alleges direct battery against OYA under the OTCA. SAC ¶¶ 208-214. Pursuant to the analysis in *Moore v. Portland Pub. Schs*., Time-barred Plaintiffs' battery claims are untimely and should be dismissed. *Moore v. Portland Pub. Schs*., 328 Or. App. 391, 394–95, (2023). In *Moore,* eight female paraeducators who were employed by Portland Public Schools ("PPS") asserted multiple claims for relief against individual defendants and PPS based on allegations that "they were subject to daily assaults and battery to their persons by students, including sexual assaults and battery." *Id. at* 396. As in the present case before the Court, the *Moore* plaintiffs filed their claims together, but the claims were based on multiple separate and distinct instances of alleged battery. *Id.* The claims in *Moore* were filed under the Oregon Tort Claims Act. O.R.S. 30.260–30.300 ("OTCA"). As noted in *Moore,* the timeliness of claims brought under the OTCA is guided by O.R.S. Section 30.275 which states that all claims, except for claims based on wrongful death, notice must be provided within 180 days after the alleged loss or injury. O.R.S. 30.275(b). The action itself must commence within two years after notice is provided. O.R.S. 30.275(9).

The court found the *Moore* plaintiffs' claims untimely insofar as they extended beyond the 180 days before the action was commenced. The *Moore* plaintiffs attempted to overcome the issue of timeliness by arguing that the batteries showed a continuing pattern of conduct within the relevant time period, which allows for allegations outside the 180-day limitation period to form the basis of the claim under the continuing tort doctrine. *Moore,* 328 Or. App. at 410-11. The court rejected this argument, holding that "discrete instances of battery that are "'separately



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

actionable and not merely an element of a single tort,'" even if an ongoing pattern of abuse can be shown, do not fit within the characterization of a continuing tort. *Id. (internal citations omitted).* The court held that any battery claims that occurred more than 180 days before the filing of the relevant complaint were properly dismissed. *Id.* at 412.

The Oregon Court of Appeals recently added additional clarification on the question of whether multiple instances of battery can create a continuing tort. There, the court defined a continuing tort as one where either no single act gives rise to the tort claim, or the plaintiff's harm can be determined only at the end of a series of alleged wrongful acts based on the cumulative effect of the wrongful behavior. *Siskiyou Pines Devs. LLC v. Civ. W. Eng'g Servs., Inc.*, 350 Or. App. 28 (2026). The court noted that plaintiff's allegations amount to "repetitious discrete torts which result in similar but separate injuries." *Id.* at 34 (citing to *Holdner v. Columbia County*, 51 Or. App. 605, 613, (1981)). Plaintiffs' battery claims do not fit the definition of a continuing tort because each individual battery produces immediate, separately compensable harm and required not only notice but timely commencement of this action. The timeliness issues in *Moore* are analogous to Time-barred Plaintiffs' claims in the present case, and as such, Time-barred Plaintiffs' seventh claim for relief should be dismissed.

Should Time-barred Plaintiffs argue a delayed discovery theory prevents dismissal, the same evidence presented to support dismissal of Time-barred Plaintiffs federal claims support dismissal of their battery claims. The Oregon Supreme Court held that for battery claims, the discovery rule requires knowledge of three elements: (1) harm; (2) causation; and (3) the tortious nature of the conduct. *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 328, (2013). The court explained that the limitations period does not begin to run until the plaintiff discovers or should have discovered not just that the touching occurred, but that the touching was offensive or tortious in nature — an objective standard assessed from the perspective of a reasonable person in the plaintiff's circumstances. *Id.* at 332. The evidence in the record is clear. Time-barred Plaintiffs were aware the touching occurred and have testified at deposition that they knew at the



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

time of the contact with Dr. Edwards or in the intervening years, that the touching by Edwards was wrong and was offensive. Based on the evidence in the record and the controlling law, Time-barred Plaintiffs battery claims against OYA are untimely and should be dismissed.

## III. Plaintiffs cannot meet their burden for federal claims against supervisory defendants Richard A. Hill, Darin Humphreys, Isidro Thompson, Daniel Berger, and Philip Cox.

Plaintiffs allege violations of Section 1983 liability under the Eighth and Fourteenth Amendments pursuant to a theory of supervisory liability against individual defendants that held positions of supervisory authority at OYA, asserting that Dr. Edwards' sexual abuse at MYCF was prevalent and well-known among the MYCF administration and staff for decades.

As a preliminary legal matter, an individual supervisor may not be found liable under Section 1983 for acts of a subordinate under a general theory of *respondeat superior* or general supervisory liability. Instead, in order to find supervisory employees liable for damages arising from acts of subordinates, a plaintiff must show either that (1) the supervisor personally participated in the alleged constitutional violations, or (2) that there was a sufficient causal connection between the supervisor's own conduct and the alleged constitutional violation. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Put another way, a supervisor's liability under Section 1983 must be rooted in their own personal culpable conduct, and not the mere fact of a supervisory relationship.

Further, in order to establish liability under a supervisory liability theory, plaintiffs must show that the defendant had an actual supervisory role over the alleged direct perpetrator of the constitutional violations—here Dr. Edwards or Susan Baumgartner. For a number of the OYA defendants the question of personal culpability or supervisory role remains a factual question that defendants will address at trial. However, there are various defendants for whom there is no plausible basis for Section 1983 liability under the above-articulated standard, either because their time employed in a supervisory role at OYA did not overlap with plaintiffs' time in custody at MYCF or because they lacked supervisory authority over Dr. Edwards.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

A threshold issue here is the group-pleading defect in plaintiffs' claims —all of plaintiffs' claims lump fourteen former OYA Directors and MYCF Superintendents ("Supervisory Defendants"), and one gym teacher, together without individualized allegations in violation of established pleading standards in both the Supreme Court and Ninth Circuit.[5] In *Gibson v. City of Portland*, the Ninth Circuit defined a shotgun pleading as one where "a party indiscriminately incorporates assertions from one count to another, for example, by incorporating all facts or defenses from all previous counts into each successive count ... prevent[ing] the opposing party from reasonably being able to prepare a response or simply mak[ing] the burden of doing so more difficult." *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026). The court held that even when a complaint contains detailed background facts, if its substantive causes of action generically lump "defendants" together, it fails the short and plain statement requirement of Rule 8(a)(2).

Plaintiffs' indiscriminate, undifferentiated aggregation of all individual claims against all defendants is particularly troublesome here because there are eleven plaintiffs making multiple claims against sixteen defendants across seventeen years. In cases where supervisory liability is alleged, a supervisor can be held liable in his or her individual capacity under Section 1983 only if (1) the supervisor personally participated in the constitutional violation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Here, several Supervisory Defendants held offices outside the window of a given plaintiff's time at MYCF and cannot be causally connected to the alleged constitutional violation.

Crucially, for liability to attach in a supervisory liability argument, the supervisors must have actual supervisory authority over the government actor who committed the alleged

[5] *Ashcroft v. Iqbal* established that a complaint cannot rely on "naked assertions" or collective, conclusory labels labeling multiple officials or entities as liable. *See Ashcroft v. Iqbal* 129 S.Ct. 1937 (2009). A plaintiff must plead sufficient factual content to draw a *plausible* inference of individual liability for each specific defendant. *Id.*



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

violations. *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018). In other words, "[t]hey cannot be supervisors of persons beyond their control." *Id.*; *see also Olson v. County of Grant*, 127 F.4th 1193, 1198 (9th Cir. 2025) (declining "to impose supervisory liability for a constitutional violation where, at best, there was a cooperative relationship between [law enforcement] colleagues"). Here, there is no allegation that the Supervisory Defendants were personally involved in the alleged constitutional violations. Therefore, plaintiffs have the burden of producing evidence of both wrongful conduct by Supervisory Defendants and establishing a sufficient causal connection between each individual Supervisory Defendant's conduct and the independent acts of abuse by Dr. Edwards or defendant Susan Baumgartner.

There are a limited number of ways in which a plaintiff may meet their burden on supervisory liability arguments. Supervisors can be held liable for: "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022); *see Starr*, 652 F.3d at 1207-08. Deliberate indifference has both objective and subjective components. In particular, plaintiffs must establish (1) plaintiffs faced an objectively substantial risk of harm; (2) each defendant was subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed; and (3) each defendant actually drew that inference, or a reasonable official would have been compelled to draw that inference. *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 844 (9th Cir. 2010). Deliberate indifference is a stringent standard and requires misconduct that "shock[s] the conscience." *Id.*; *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997) (stating that "deliberate indifference is a stringent standard of fault") (citation modified). Negligence or even gross negligence will not suffice. *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021).



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

In *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), the Ninth Circuit approved the district court's instruction that the jury could find a police chief liable in his individual capacity for the acts of his subordinates if he "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Id*. at 646 (modified). Notably, there is an element of knowledge required for each argument to find supervisory liability. Again, Plaintiffs have not made specific claims as to each of the defendants, instead broadly lumping all Supervisory Defendants together. The law requires the Court to evaluate the conduct of each Supervisory Defendant and make individualized determinations as to each defendant's culpability.

Supervisory liability is assessed on an individual basis and "may not be imposed based on a 'team effort' theory that would allow the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." *Peck v. Montoya*, 51 F.4th 877, 890 (9th Cir. 2022). The Court's inquiry at summary judgment "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). That kind of careful analysis is particularly necessary here, where multiple plaintiffs allege claims of abuse occurring in entirely different time periods, years apart. Despite plaintiffs lumping all Supervisory Defendants together, each defendant's "potential liability varies, depending on whether each [defendant] was aware of facts from which an inference could be drawn that a substantial risk of serious harm to [each plaintiff] existed, and upon whether each [defendant] *actually drew* that inference." *Tamas*, 630 F.3d at 847 (emphasis in original). Plaintiffs cannot meet this burden for supervisory liability with regard to defendants Richard A. Hill, Darin Humphreys, Isidro Thompson, Daniel Berger, and Philip Cox. Summary judgment should be granted in favor of the Non-Supervisory Defendants on plaintiffs' federal claims.

**A. Plaintiffs cannot meet their burden of proof for claims against Defendant Richard A. Hill.**



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Defendant Richard A. Hill ("Director Hill") was the director at the OYA between July 1995 and May 2000. LaBarre-Bates Decl. ¶¶ 2-3; Exs. 101, 102. On the face of the Complaint Director Hill was not employed as a director at OYA during the time any plaintiff was in custody at MYCF. Defendant Baumgartner was not employed by OYA until July of 2000, after Director Hill had left his supervisory position at OYA. *Id.* ¶ 8; Ex. 107. At a minimum, there can be no supervisory liability claims against Director Hill for the actions of an individual over whom he never had supervisory authority. There are no direct allegations of wrongful conduct by Director Hill and no specific allegation of a report to Director Hill of the alleged abuse by Edwards. Plaintiffs cannot meet their burden of proof to show a sufficient causal connection between Director Hill's conduct and the independent acts of Dr. Edwards or Baumgartner. As such, Defendant Richard Hill is entitled to dismissal of all claims against him.

### B. Plaintiffs cannot meet their burden of proof for claims against Defendant Darin Humphreys.

Darin Humphreys ("Humphreys") served as a Superintendent at MYCF for only 3 months. Humphreys began in the Superintendent position on February 1, 2007, and resigned from his position on June 8, 2007. *Id.* ¶¶ 4-5; Exs. 103, 104. Humphreys was not acting as a superintendent between May 2007 and the date of his resignation due to allegations of misconduct in a prior position at OYA – his resignation had nothing to do with the subject of this litigation, and he faced no allegations of sexual abuse. Notably, plaintiffs T.A.M., J.K.B., E.C.R., J.K.C., R.L.M., A.W., B.W.H., and J.D.W all concede that their claims against Humphreys should be dismissed.

There are no direct allegations of wrongful conduct by Humphreys and no specific allegation of any report to Humphreys of conduct by Dr. Edwards which would show that Humphreys was subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm to plaintiffs' N.T.N. and/or S.S.L. existed. Plaintiffs cannot meet their burden of proof with regard to Humphreys and Humphreys is entitled to dismissal of all supervisory claims against him.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

### C. Plaintiffs cannot meet their burden of proof for claims against Defendants Isidro Thompson, Daniel Berger, and Philip Cox.

Plaintiffs cannot attach liability to Superintendents Isidro Thompson ("Thompson") and Daniel Berger ("Berger") because they had no actual supervisory authority over either defendant Baumgartner or Dr. Edwards, who are alleged to have personally committed the Section 1983 violations. Thompson was employed as a superintendent at MYCF from March 2010 to September 2013. *Id.* ¶ 6; Ex. 105. Berger was subsequently employed as a superintendent from March 2013 to early 2025. *Id.* ¶ 7; Ex. 106. Defendant Susan Baumgartner was employed at MYCF from July 2000 to August 2002 and was never supervised by Thompson or Berger. *Id.* ¶ 8; Ex. 107.

Dr. Marcia Adams ("Dr. Adams") was hired on October 24, 2007, as the supervising physician/medical director at OYA. *Id.* at ¶ 9; Ex. 108. In 2009, OYA restructured and created the Health Services Division consolidating all direct medical care under the Medical Director. *Id.* at ¶¶ 13-15; Exs. 112-114. Following the centralization of health services under Dr. Adams the superintendents at OYA had no actual supervisory authority over Dr. Edwards. *Id.* at Ex. 113. The chain of supervisory authority was OYA director to Medical Director (Dr. Adams) to Dr. Edwards. *Id*. Thus, supervisory liability cannot attach to Thompson and Berger, where each, in their role as a superintendent, had no actual supervisory authority over Dr. Edwards during their tenure. See *Felarca*, 891 F.3d at 820. Again, plaintiffs T.A.M., J.K.B., E.C.R., J.K.C., R.L.M., A.W., B.W.H., and J.D.W. all concede that their claims against Thompson, Berger, and Dr. Admas should be dismissed. Plaintiff A.M.W. concedes that his claims against Berger should be dismissed. N.T.N., S.S.L. and A.M.W. cannot meet their burden of proof as to Thompson and Berger and their claims should be dismissed accordingly.

Similarly, supervisory liability cannot attach for defendant Philip Cox ("Cox"). Cox was employed in the program office at OYA first as a Program Coordinator from 1995 to 1999, as a Health Services Administrator from 1999 to 2007, as Assistant Director of the Program Office from 2007 to 2009, then after OYA's 2009 restructuring, as Assistant Director for Community



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Resources from 2009 to 2016. Cox Decl. ¶¶ 3-6; LaBarre Bates Decl. ¶¶ 10-12, Exs. 109-111. Plaintiffs misinterpret the evidence in the record to support their claims, but in these roles, Cox never had supervisory authority over any doctors employed by the state in OYA's correctional facilities, and specifically never had supervisory authority over Edward Gary Edwards, M.D. Cox Decl. ¶ 9-14.

For example, the Program Office developed correctional pro-social treatment, addiction services treatment, staff training, quality assurance, and agency rules and policies. *Id.* ¶ 2. Cox's roles in the Program Office had no supervisory authority over Dr. Edwards. *Id.* ¶ 7. Instead, they were colleagues whose work could be said to be cooperative, rather than affording authority over one another just as in *Olson v. County of Grant*, where the court declined to impose supervisory liability for a constitutional violation where, at best, there was a cooperative relationship between the defendants. 127 F.4th 1193, 1998 (9th Cir. 2025).

**IV. Plaintiffs concede that they do not have supervisory claims against all Supervisory Defendants.**

For the record, State Defendants note that following conferral, plaintiffs agreed to dismiss their Section 1983 claims under the Eighth and Fourteenth Amendments against the following Supervisory Defendants:

- Plaintiffs T.A.M., J.K.B., E.C.R., J.K.C., R.L.M., and J.D.W. agree to the dismissal of their claims against the following defendants: Peters, Pakseresht, O'Leary, Conzoner, Humphreys, Riggan, Thompson, Berger, and Adams.
- Plaintiff B.W.H. agrees to the dismissal of his claims against the following defendants: Peters, Pakseresht, O'Leary, Humphreys, Riggan, Thompson, Berger, and Adams.
- Plaintiff A.W. agrees to the dismissal of his claims against the following defendants: Pakseresht, O'Leary, Conzoner, Humphreys, Riggan, Thompson, Berger, and Adams.
- Plaintiff A.M.W. agrees to the dismissal of his claims against the following defendants: Pakseresht, O'Leary, and Berger.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

## V. Plaintiffs Concede that only Adjudicated Plaintiffs have Fourteenth Amendment claims and only Convicted Plaintiffs have Eighth Amendment Claims.

- Plaintiffs T.A.M., J.K.B, E.C.R, J.K.C, R.L.M, A.W., B.W.H, J.D.W., AND S.S.L. were adjudicated and concede that they do not have Eighth Amendment claims.
- Plaintiffs A.M.W. and N.T.N. were convicted and concede that they do not have Fourteenth Amendment claims.
- The only allegations of abuse by Baumgartner are from E.C.R. who does not have a basis to bring an Eighth Amendment claim.


Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

## CONCLUSION

For the reasons set forth above, this Court should grant State Defendants judgment on (1) all claims filed by plaintiffs T.A.M., E.C.R., J.K.C., A.M.W., and R.L.M. and (2) plaintiffs' federal claims against defendants Richard A. Hill, Darin Humphreys, Isidro Thompson, Daniel Berger, and Philip Cox under 42 U.S.C. § 1983, *i.e.*, the Second, Third, and Fourth Claims for Relief.

DATED August 14, 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General

*s/ Jessica Kampfe*
NATHANIEL AGGREY #172283
JESSICA KAMPFE #063887
Senior Assistant Attorneys General
Trial Attorneys
Tel (503) 947-4700
Nathaniel.Aggrey@doj.oregon.gov
Jessica.Kampfe@doj.oregon.gov

*Of Attorneys for Defendants Adams, Berger, Brazeau, Conzoner, Florip, Hill, Humphreys, Jester, Lawhead, Mink, O'Leary, Pakseresht, Peters, Riggan, State of Oregon, and Thompson*

HEIDI L. MANDT, OSB #953459
JESSICA L. LANCASTER, OSB #134151
ASHLEY SHEARER, OSB #184980
JACLYN E. GARCIA, OSB #233294
Williams Kastner
805 SW Broadway, Suite 2440
Portland, OR 97205
Phone (503) 228-7967
HMandt@williamskastner.com
jlancaster@williamskastner.com
ashearer@williamskastner.com
jgarcia@williamskastner.com

*Special Assistant Attorneys General for Defendants Adams, Berger, Brazeau, Conzoner, Florip, Hill, Humphreys, Jester, Lawhead, Mink, O'Leary, Pakseresht, Peters, Riggan, State of Oregon, and Thompson*